# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CANDANCE KAGAN, MARY LACOSTE, JOCELYN M. COLE, AND ANNETTE WATT, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF NEW ORLEANS, LOUISIANA, <br><br> Defendant. | Civil Action No. _____ <br><br> Section _____ <br><br> Magistrate _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This civil-rights lawsuit seeks to vindicate the rights of tour guides in New Orleans, Louisiana, to earn their living by speaking on the topics of their choice without first obtaining a special license from the city government. Pursuant to the New Orleans Code of Ordinances, Plaintiffs Candance Kagan, Mary LaCoste, Jocelyn M. Cole, and Annette Watt (and every other New Orleans tour guide) are subject to imprisonment for up to five months and $300 in fines, per violation, if they speak to their customers about "points of interest" in New Orleans without the city's permission. Plaintiffs are committed to protecting their First Amendment right to speak freely to others about New Orleans, its culture, and its history without the prior restraint of a government-issued license.

## JURISDICTION AND VENUE

2. Plaintiffs bring this civil-rights lawsuit pursuant to the First Amendment to the United States Constitution; 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. § 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiffs earn their living as tour guides. Each regularly conducts in-person tours of various New Orleans locations for compensation.

5. Plaintiff Candance Kagan is a United States citizen and a resident of Louisiana.

6. Plaintiff Mary LaCoste is a United States citizen and a resident of Louisiana.

7. Plaintiff Jocelyn M. Cole is a United States citizen and a resident of Louisiana.

8. Plaintiff Annette Watt is a United States citizen and a resident of Louisiana.

9. Defendant City of New Orleans is a municipal entity organized under the laws of Louisiana.

## FACTS

*The New Orleans Tour Guide Licensing Law*

10. Anyone giving tours for compensation in New Orleans must possess a tour guide license. New Orleans City Code § 30-1551 ("No person shall conduct tours for hire in the parish who does not possess a tour guide license..."). New Orleans City Code § 30-1486 defines a "tour guide" as anyone who "conduct[s] one or more persons to any of the city's points of interest and/or historic buildings, parks or sites, for the purpose of explaining, describing or generally relating the facts of importance thereto."

11. The licensing requirement applies only if Plaintiffs are speaking about points of interest or the historical significance of various city sites. Plaintiffs could silently lead a group of customers around the city, on foot, without needing any kind of license at all.

12. New Orleans requires anyone wishing to obtain a tour guide license, and thereby work as a tour guide in the city, to take a written examination. Specifically, New Orleans City Code § 30-1553 requires a written examination of "the applicant's knowledge of the historical, cultural and sociological developments and points of interest of the city." One cannot work as a tour guide in New Orleans without answering at least 70% of the questions on this test correctly. The city retains discretion to require that applicants also pass a verbal examination. New Orleans City Code § 30-1553(3).

13. New Orleans allows applicants to take one of at least three written examinations. First, the nonprofit Friends of the Cabildo offers an examination in conjunction with their tour guide training program. Second, Delgado Community College offers its own written examination in conjunction with a training course offered there. Third, the City of New Orleans offers its own written examination for applicants.

14. In addition to passing the written examination, the city's "Application for a Tour Guide Permit" requires anyone wishing to obtain a tour guide license in New Orleans to undergo a criminal background check, which includes being fingerprinted; take a drug test in the form of a urine test; and disclose their social security number and driver's license number. Applicants must also pay a $50 fee. New Orleans City Code § 30-1557.

15. Tour guide licenses must be renewed every two years, New Orleans City Code § 30-1554, at which time individuals must re-take the urine test for drugs and undergo a new criminal background check. The renewal fee is $20. New Orleans City Code § 30-1557.

16. Giving a tour without a valid license is punishable by imprisonment for up to five months and $300 in fines per violation. New Orleans City Code § 30-78, *incorporating* New Orleans City Code § 1-13.

17. The tour guide licensing requirement applies everywhere within the city limits of New Orleans.

18. New Orleans imposes certain restrictions on tour guides that are unrelated to licensure. For instance, tours are limited to 28 patrons, must end by 10:00 p.m., and must maintain a 50-foot separation between tours. New Orleans City Code § 30-1489. These restrictions are aimed at how tours may be conducted, rather than who may speak about the city. Plaintiffs do not challenge these restrictions here.

*Plaintiffs and Their Tours*

19. Plaintiffs earn their living as tour guides in New Orleans. They give tours of the city's French Quarter, Garden District, cemeteries, and other locations to groups of individuals for compensation. On these tours, Plaintiffs conduct groups of individuals to points of interest and describe the history and importance of those points of interest. In other words, Plaintiffs speak to people about New Orleans. In order to speak, they are required to possess a license issued by the city.

20. Plaintiffs give a variety of tours. The most common is a "historical" tour, during which the guide describes points of historical interest to customers. In addition to historical tours, Plaintiffs give "ghost" and "vampire" tours that discuss alleged supernatural occurrences around the city; "cocktail" tours that visit different establishments in order to sample unique alcoholic beverages; "culinary" tours that visit different restaurants in order to sample different foods; and "cemetery" tours on which Plaintiffs describe the historical significance and different

features in New Orleans's many cemeteries. Each and every one of these tours requires the person giving the tour to possess a city-issued tour guide license.

21. Plaintiff Candance Kagan primarily gives historical tours of New Orleans on behalf of the nonprofit Friends of the Cabildo, which promotes the historical preservation of New Orleans landmarks. Candance volunteers to give these tours and is not compensated for them. Participants pay to attend these tours, but the proceeds go to the individual charity, rather than to Candance personally. She also volunteers to give tours on behalf of the nonprofit Save Our Cemeteries, which promotes the preservation of historic cemeteries in New Orleans. Candance is compensated for giving cocktail tours, culinary tours, and certain cemetery tours.

22. Plaintiff Mary LaCoste gives historical tours, ghost tours, cemetery tours, culinary tours, and cocktail tours, all for compensation.

23. Plaintiff Jocelyn M. Cole owns her own business and has a valid New Orleans tour operator license (which is not the subject of this lawsuit). She also works as a tour guide, giving cemetery tours, historical tours, and ghost tours for compensation.

24. Plaintiff Annette Watt primarily gives cemetery tours, although she also gives tours of the Garden District of New Orleans, as well as culinary and cocktail tours, all for compensation.

25. Mary, Jocelyn, and Annette currently possess New Orleans tour guide licenses.

26. Candance's tour guide license has expired. She tried to renew it, but her renewal was rejected when she refused to allow the city to keep her social security number on file.

27. Each Plaintiff personally conducts approximately 10-15 tours per week. Candance, Mary, and Annette are compensated by individual tour guide businesses for each tour they give. Jocelyn is a tour operator in addition to being a licensed tour guide.

28. Plaintiffs operate their tours on the public streets, sidewalks, and squares of New Orleans. The sidewalks, streets, and squares that Plaintiffs operate on are quintessential public forums.

29. Plaintiffs conduct these tours on foot. The customers who participate on these tours are also on foot. The guide and the customers walk from point to point and the guide speaks along the way about the significance and history of various points of interest. Guides convey information that they believe their customers will be interested in, such as historical anecdotes, local rumors, and even jokes. Much of what the plaintiffs tell on their tours is not tested on the various written examinations that tour guides are required to pass. The information conveyed varies from guide to guide and tour to tour. Guides do not follow a particular script, and their tours generally change over time as each individual guide learns what material is most interesting to customers.

30. The only information Plaintiffs typically collect from customers consists of the customer's name, hometown, and any information necessary to process payment for the tour.

31. In giving tours, Plaintiffs do not exercise judgment on behalf of their customers.

32. In giving tours, Plaintiffs do not enter into a fiduciary relationship with their customers.

**INJURY TO PLAINTIFFS**

33. All preceding allegations are incorporated herein as if set forth in full.

34. Plaintiffs face imprisonment for up to five months and $300 in fines per violation if they speak (on certain subjects) without a license.

35. Defendant's attempt to restrict the discussion of information about the city's places and points of interest is causing and will continue to cause ongoing and irreparable harm to Plaintiffs.

36. The licensing scheme imposed by Defendant's regulations places special burdens on Plaintiffs because of the content of their speech.

37. In order to obtain a license to describe places and points of interest in New Orleans, Plaintiffs are required to take and pass (with a score of 70% or higher) one of at least three written examinations offered by different entities. Many of the facts contained in the written examinations are not relevant to the tours Plaintiffs give.

38. In order to obtain a tour guide license, Plaintiffs are required to pay money, disclose highly sensitive personal information, be fingerprinted for a criminal background check, and urinate into a cup for a drug test. In order to maintain that license, Plaintiffs must undergo these same requirements every two years.

39. These requirements are burdens placed on Plaintiffs solely because of the content of their speech.

40. These requirements act as a prior restraint on Plaintiffs' speech. It is illegal for them to speak before obtaining a license.

41. Without a license, Plaintiffs would be unable to meaningfully share their opinions, thoughts, and knowledge about New Orleans with their paying customers.

42. On information and belief, Defendant does not have a compelling government interest in requiring tour guide licensing; and, even if it did, the law is not narrowly tailored to achieve that interest.

43. On information and belief, Defendant possesses no evidence that the licensing requirements cited above actually advance any important government interest.

44. Any government interests purportedly advanced by any or all of the tour guide licensing requirements could be advanced equally effectively by any number of less-restrictive alternatives, including a voluntary, rather than mandatory, tour guide certification system.

## CAUSE OF ACTION

45. All preceding allegations are incorporated herein as if set forth in full.

46. The mandatory tour guide licensing scheme described above violates Plaintiffs' rights to free speech as guaranteed by the First Amendment to the United States Constitution.

47. Unless Defendant is enjoined from enforcing New Orleans City Code §§30-1486 to 1488, 30-1490, and 30-1551 to 1557, and the regulations and rules promulgated thereunder, Plaintiffs will suffer continuing and irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief as follows:

A. A declaratory judgment by the Court that, facially and as applied to Plaintiffs, New Orleans City Code §§ 30-1486 to -1488, 30-1490, and 30-1551 to -1557, and the regulations and rules promulgated thereunder, violate the First Amendment to the United States Constitution;

    B.    A permanent injunction prohibiting Defendant or its agents from enforcing New Orleans City Code §§ 30-1486 to -1488, 30-1490, and 30-1551 to -1557, and the regulations and rules promulgated thereunder;

    C.    $1.00 in nominal damages;

    D.    An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and,

    E.    Such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted
this 13th day of December, 2011.

_[signature]_

Mark E. Hanna (LA Bar No. 19336)
BRADLEY MURCHISON KELLY
& SHEA, LLC
1100 Poydras, Suite 2700
New Orleans, LA 70163
(504) 596-6300
(504) 596-6301 (fax)
mhanna@bradleyfirm.com

Matthew R. Miller (TX Bar No. 24046444)*
    **TRIAL COUNSEL**
INSTITUTE FOR JUSTICE TEXAS CHAPTER
816 Congress Ave, Suite 960
Austin, Texas 78701
(512) 480-5936
(512) 480-5937 (fax)
mmiller@ij.org
whottot@ij.org

\* Application for admission *pro hac vice* filed concurrently with this document.